**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

APOLLO ENDOSURGERY,  INC.,

                    Plaintiff

v.                                                **CIVIL ACTION NO. _____**

PETER KAFKA AND GREG GRIMM,

                    Defendants

**PLAINTIFF'S VERIFIED ORIGINAL COMPLAINT FOR**
**DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff APOLLO ENDOSURGERY, INC. ("Apollo") files this Verified Original Complaint for Damages and Injunctive Relief against Defendants PETER KAFKA ("Kafka" or "Defendant") and GREG GRIMM ("Grimm" or "Defendant") (collectively, "Defendants"), and respectfully shows the Court as follows:

## I.      <u>INTRODUCTION</u>

1.      This is an action at law and in equity for trademark infringement and unfair competition, including counterfeiting and dilution, all arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051 et seq. ("Lanham Act") and Florida Common Law, as well as for dilution and for deception under Florida law (Fla. Stat. §495.151, alleging dilution and the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §501.201 *et seq*., alleging deception).  In addition, this action alleges interference with commercial relationships, both extant and prospective, and violations of employment duties, including, but not limited to, the duty of loyalty that every employee owes to his employer.

2.      Apollo exclusively labels and markets a Class III medical device known throughout the world as a LAP-BAND®  System or LAP-BAND® gastric band ("LAP-BAND").  Exhibit A, Declaration of Brian Szymczak, Oct. 5, 2015 at ¶3 ("Szymczak Decl.").  Originally developed by Allergan, Inc. ("Allergan"), Apollo purchased the assets of its LAP-BAND business from Allergan in 2013.  *Id.*  As a result of that transaction, Apollo owns the patent rights to the product, the various trademark rights in the mark and name "LAP-BAND" and its varietal representations, as well its distinctive and famous marking.  It also owns the copyrights to its labels for the product. *Id.* at ¶4.

3.      Apollo's LAP-BAND is indicated for weight reduction for patients with obesity, with a Body Mass Index ("BMI") of at least 40 kg/m2 or a BMI of at least 30 kg/m2 with one or more obesity-related comorbid conditions and for use only in adult patients who have failed more conservative weight reduction alternatives, such as supervised diet, exercise and behavior modification programs.  Exhibit B, LAP-BAND Directions for Use ("DFU").  As a Class III medical device, the LAP-BAND device is considered by the United States Food and Drug Administration  ("FDA") to be in that category of instruments that are " the highest risk devices and are therefore subject to the highest level of regulatory control."[1]

4.       To ensure compliance with all applicable health and safety regulations, Apollo follows a quality assurance process to vet the sterilization and stability of its LAP-BAND devices.  Exhibit A, Szymczak Decl. at ¶5.  In accordance with a quality control process, consistent with FDA regulations and guidance, Apollo labels its medical devices with an expiration date that indicates the latest date on which that device is validated to be sterile and/or safe for human use.  *Id.* at ¶6.

---

[1] *What Does It Mean for FDA to "Classify" a Medical Device?*, U.S. Food and Drug Administration, available at http://www.fda.gov/AboutFDA/Transparency/Basics/ucm194438.htm (last updated July 7, 2015).

LAP-BAND devices that reach their expiry are never to be used in patients because efficacy, sterility and safety cannot be assured.  Such devices are remanded to non-patient uses or more often are destroyed.  *Id.* at ¶7.

5.      Defendants are former employees of both Allergan and Apollo. Prior to their termination from Apollo in May 2015, Defendant Kafka was Senior Market Development Manager based in Miami, Florida and Defendant Grimm was a Senior Account Manager based in Tampa, Florida.

6.      On August 25, 2015, Apollo first discovered an electronic mail communication between Kafka and Grimm dated May 27, 2015 with the title "Ship for tomorrow."   Exhibit C, Email from P. Kafka to G. Grimm, May 27, 2015 ("May 27, 2015 email").  Attached to that email was a photo of six (6) LAP-BANDs; four (4) the of LAP-BAND devices appear to be in their original trade dress and packaging, all of which have expired or are nearing expiry and two (2) LAP-BAND devices appear to have irregular labels and packaging.  Exhibit D, Photograph of 6 Devices and a Sticky Note  ("393 Photo").  Mr. Kafka instructed Mr. Grimm that the products need "2017 dating" and "STD reboxing."  Exhibit C, May 27, 2015 email.  The email goes on to discuss the fact that there are 11 more in the pipeline with "a bunch more that will need redating" pegged at an additional 19 required before September. *Id*.  According to Kafka, the sum of that activity would provide "$weet flow" to Grimm.  *Id*.

7.      After discovering this e-mail, Apollo immediately notified the FDA on August 28, 2015 and continued to check the status with the FDA.  On September 23, 2015, the FDA advised that they had no objection to Apollo filing this suit to protect the public health.

8.      Upon information and belief, Mr. Kafka and Mr. Grimm were and are involved in acquiring expired or nearly expired Apollo gastric LAP-BAND devices, re-dating the packaging to make it appear that there is ample shelf life to those LAP-BAND devices, and selling them for

use in unsuspecting patients who have no reason to believe that their surgical implants were over-labeled with a re-date and are not authentic Apollo LAP-BAND devices carrying validated assurances of sterility and efficacy.  In fact, these goods are no longer validated as safe and effective and are required by Apollo to never be surgically implanted in a patient and as a result should be destroyed. Exhibit A, Szymczak Decl. at ¶7.

9.     Apollo has also discovered that Defendant Kafka had for at least eighteen (18) months, between December 2013 and May 2015, been exchanging emails with an administrator at a South Florida surgical practice, Bariatrix Florida. Typically in these emails Mr. Kafka would seek her forecast of "self-pay" LAP-BAND device surgeries. Upon information and belief, Mr. Kafka was acquiring grey market LAP-BAND product, supplying that LAP-BAND product to Bariatrix to use in the self-pay cases, and in turn was being personally paid for that supply.

10.    In acquiring expired or nearly expired LAP-BAND devices and re-dating them by over-labeling the original expiration date, and then selling these products as if they were original, authentic Apollo gastric bands, Defendants are dealing in counterfeit goods, palming them off in many instances to unsuspecting parties. In this way, Defendants falsely and deceptively promote their products as usable Apollo LAP-BAND devices, which they are not.  Furthermore, Defendants continue to violate Apollo's rights through unauthorized use of the Apollo registered trademarks in the packaging of the over-labeled goods. Defendants' dishonest actions subvert the protocols and agreements between Apollo and its customers that have been designed and put into place to assure patients of safe and effective surgical materials.

11.    Defendants' acts of deceit and infringement dilute the value of Apollo's distinctive and famous trademark, LAP-BAND®; put at risk its earned goodwill; disrupt its sales and commercial relationships; and  cause a clear and present threat to its reputation. Defendants'

continued activities pose a substantial risk of irreparable harm, not only to Apollo, its customer relationships with medical providers and its trademarks, but also to the unsuspecting hospitals, surgeons, and especially patients who ultimately receive over-labeled Class III medical devices meant for human implantation that are void of the assurances of safety, sterility and efficacy. Safety, sterility and efficacy are the minimum conditions of decency upon which Apollo stakes its reputation in the medical device and technology markets, as well as to and among the broad base of patients who depend upon this medical device to offer them an opportunity to improve their health.   As a result, Apollo seeks a temporary restraining order and preliminary injunction and ultimately a permanent injunction against Defendants, as well as relief for the damages suffered by Apollo as a result of Defendants' actions.

## II.   PARTIES

12.    Plaintiff Apollo Endosurgery, Inc. is a Delaware corporation whose principal place of business is 1120 S. Capital of Texas Highway, Building 1, Suite 300, Austin, Texas 78746.

13.    Defendant Peter Kafka is an individual whose last known residential address was 6715 NW 66 Avenue, Parkland, Florida 33067. Mr. Kafka was employed by Apollo from December 2013 until May 2015.

14.    Defendant Greg Grimm is an individual whose last known residential address was 8360 Tallahassee Drive, NE, St. Petersburg, Florida, 33702.  Mr. Grimm was employed by Apollo from December 2013 until May 2015.

## III.   JURISDICTION AND VENUE

15.    Apollo brings claims against Defendants for violations of the United States Trademark Act, 15 U.S.C. §§ 1051 *et seq*., which arise under federal law.  As a result, jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331.  Apollo also asserts Defendants have violated Section

43 of the Lanham Act, 15 U.S.C. § 1125. Jurisdiction is therefore additionally appropriate under 28 U.S.C. § 1338(a). Furthermore, Apollo brings claims under the statutory laws and common law of the State of Florida and this court has pendant jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367. Finally, Plaintiff and Defendants are citizens of different states and the amount of damages in controversy exceeds $75,000. Therefore, jurisdiction is proper under 28 U.S.C. §1332(a).

16.     The exercise of personal jurisdiction in Florida is proper because Defendants' residence and business activities have taken and currently do take place in Florida, including in the Southern District of Florida. In particular, the acts giving rise to Apollo's complaint have occurred within the State of Florida and, more particularly, within the Southern District of Florida. Specifically, Defendants have gathered expired and near-expired Apollo LAP-BAND devices and then conspired to re-date and in some cases re-package, those goods in the State of Florida and specifically the Southern District of Florida. Upon information and belief, Defendants have purposefully and voluntarily placed these over-labeled medical devices into the stream of interstate commerce with the expectation that they will be purchased by consumers, including doctors, hospitals, and other medical service providers, in the Southern District of Florida. Upon information and belief, these consumers have purchased and continue to purchase the over-labeled medical devices in the Southern District of Florida. Furthermore, Defendants falsely represent that the over-labeled medical devices are authentic, original Apollo LAP-BAND medical devices in the Southern District of Florida.

17.     Venue is proper in the Southern District of Florida because a substantial part of the events giving rise to Apollo's claims have occurred in the Southern District of Florida. 28 U.S.C. §1391(b).

6

## IV.     FACTUAL ASSERTIONS

**A**.     **Apollo's Business Model Rests upon the Assurances That Its LAP-BAND is Safe and Effective**

18.     Apollo acquired the LAP-BAND® System from Allergan in December, 2013. Exhibit A, Szymczak Decl. at ¶3.  Along with its rights to the LAP-BAND® Mark and other trademarks, Apollo acquired the patent and design rights to the LAP-BAND System, as well as the rights and know-how to manufacture the product.  *Id*. at ¶4.  Part of the asset transfer included the intellectual property that went into the development of the product, its quality assurance program, its regimen of quality controls, and the validation of its safety, efficacy, sterility and fitness for its intended purpose.  *Id*. at ¶¶4-6.  Furthermore, Apollo acquired the full suite of LAP-BAND regulatory assets, including, but not limited to, the product's FDA-approved labeling and Class III medical device pre-market approvals.  *Id*. at ¶4.

19.     The LAP-BAND System has undergone clinical trials and testing for the past twenty (20) years.  Based upon empirical scientific outcomes, the LAP-BAND System is indicated for weight reduction for patients with obesity, with a BMI of at least 40 kg/m2 or a BMI of at least 30 kg/m2 with one or more obesity-related comorbid conditions.  Exhibit B, DFU.  It is indicated for use only in adult patients who have failed more conservative weight reduction alternatives, such as supervised diet, exercise and behavior modification programs.  *Id.*  Patients who elect to have this surgery must make the commitment to accept significant changes in their eating habits for the rest of their lives.  *Id.*  The LAP-BAND is surgically implanted in the patient using a minimally-invasive, advanced laparoscopic procedure.  *Id.* It is, however, major surgery and the system is devised as a long term implant.  *Id.*

20.     One of the most important arbiters of the safety and efficacy of an implanted medical device is the lack of bioburden it contains prior to, and during, the surgery. To ensure this lack of bioburden, Apollo has labeled the product as a Single Use Device with a two year shelf life.  *Id.* That means that the method of sterilization that the product undergoes and the packaging that houses that sterile product is assured of keeping the device bio-burden free for twenty-four months and twenty-four months alone and at that, only when the product is stored in a clean, dry location consistent with standard hospital supply storage protocols.  *Id.*  Given the potential consequences of a defective product, not to mention the significant regulatory and legal liability that could flow from such a defect, Apollo and its customers, the hospitals and doctors responsible for implanting or using these devices, as well as the products' end users, the patients, consider the stakes surrounding Apollo's quality control measures to be very high indeed.

21.     Apollo expends significant resources to assure its customers of the quality and safety of its products by undertaking validation studies that verify that the materials, processes, and procedures used in the manufacture and packaging of the products will result in a safe and sterile product being used on patients. Exhibit A, Szymczak Decl. at ¶5.

22.     Apollo's expiration date labeling is a key component of its quality control measures.  The expiration date for each product has been selected based on scientific verification of the sterilization, stability and shelf life of that product. These validation studies regarding sterilization, stability and shelf life were conducted over the past two decades and represent guidance based on substantial scientific certainty.  *Id.* at ¶¶5-6.

23.     Apollo does not re-sterilize, reprocess, remanufacture, re-package, re-date, over-label or otherwise authorize any of its products for use after the Apollo validated expiration date.  *Id.* at ¶8.  Apollo has not conducted, participated in, or authorized any studies regarding the safety or

efficacy of any "re-sterilization" or re-processing procedure or any other procedure or manipulation to extend the expiration dates of its products.  To Apollo's knowledge, there is no existing scientific data regarding the safety or efficacy of any LAP-BAND product whose expiration date has been passed.  *Id.* at ¶7.  Because of this, FDA's approved labeling for the LAP-BAND advises that packaging that is altered or impaired is to be considered "non-sterile and may cause infection" in the patient.  Exhibit B DFU.

24.     Apollo has never sold re-sterilized or re-dated LAP-BANDs. In a minority of instances, expired LAP-BANDs may be used under the supervision of an Apollo employee to demonstrate the physical dimensions of the product in educational settings or to be photographed for technical or promotional literature or for engineering-related testing and evaluation. Other than for these limited exceptions, expired LAP-BANDs should be removed from commerce and are destroyed. Exhibit A, Szymczak Decl. at ¶7.

**B.     Apollo's LAP-BAND® Marks Have Earned a Highly Distinctive and Famous Status**

25.     As a result of its quarter-century regimen of testing and validation for safety and efficacy, the LAP-BAND® name and affiliated marks have become known throughout the United States and are associated with the leading medical device for gastric banding. Indeed, LAP-BAND device sales have surpassed the sales of all other gastric band competitors combined.  *Id.* at ¶9.

26.     Apollo owns, among others, the enumerated regisrations below, which are valid and subsisting.  Exhibit E, Trademark and Domain Name Assignment and Registration Certificates ("Certificates").  Regisration Number 1937093 was filed in 1994 coterminus with the product's initially planned introduction and has remained in use and in force until this day.

| MARK | REGISTRATION NO. | FILING DATE | REGISTRATION DATE |
|------|------------------|-------------|-------------------|

|  |  |  |  |
|---|---|---|---|
| LAP-BAND | 1937093 | 11-21-1994 | 11-21-1995 |
| LAP-BAND AP | 3353342 | 02-03-2005 | 12-11-2007 |
| LAP-BANDLINK | 3840815 | 01-25-2010 | 08-31-2010 |

27.    One or more of the LAP-BAND Marks appear on all of the packaging at issue in this case.  See Exhibit D, 393 Photo.

28.    In addition, Apollo owns the rights or has interests in two other LAP-BAND related Marks, each in the form of a logo and pictured below. One or the other of these logos are contained on the packaging at issue in this matter.





2

29.    Because of the widespread adoption and use of these LAP-BAND Marks, the wording and imagry is widely recognized and relied upon by the medical community in Florida and throughout the United States to identify Apollo, its LAP-BAND product, and the training, support, and customer service that accompanies that product.  Moreover, the Marks distinguish

---

2 USPTO Registration No. 4005525

the LAP-BAND product from all others in the gastric band space, as well as differentiate it from all other obesity-related therapeutic options. The Apollo LAP-BAND Marks have become distinctive and famous, in part, because Apollo, as well as its predecessor, Allergan, have had, and presently have, broad reaches of public coverage using its LAP-BAND Marks, including, but not limited to, use in training, promotional and advertising materials directed at surgeons and other medical caregivers, as well as on and in websites, printed materials, videos, three-dimensional displays, and other training and promotional materials directed at both medical professionals and lay people alike. Additionally, the LAP-BAND device, featuring its marks, have been the subject of news and life-style reporting in significant numbers of mass media outlets throughout the United States.  As a result of the continuous usage and promotion of and publicity for the LAP-BAND Marks, Apollo has acquired, in addition to the rights established through federal registration, recognized common-law rights in those LAP-BAND Marks.  Apollo has developed and acquired significant and valuable goodwill in the LAP-BAND Marks.

**C.**     **Defendants' Willful and Intentional Misconduct**

　　　　1.     *Apollo Discovers Evidence of a Dangerous and Deceptive Scheme*

30.     Defendant Peter Kafka was terminated from Apollo on or about May 29, 2015.  Months later, Apollo discovered an alarming communication dated May 27, 2015 from Mr. Kafka to Defendant Greg Grimm, also a former employee terminated by Apollo on or about May 29, 2015.  See Exhibit C, May 27, 2015 email.  That email contained an attached photo showing six (6) packaged and sealed LAP-BANDs with their labeling visible.  See Exhibit D, 393 Photo.

31.    The six LAP-BANDs in question appear as follows:

| PRODUCT | SERIAL NO. | EXPIRATION DATE |
|---------|-----------|-----------------|
|         |           |                 |
| LAP-BAND AP Standard | 18224444 | January 2015 |
| LAP-BAND AP Large | 16820088 | June 2013 |
| LAP-BAND AP Large | 17289922 | January 2014 |
| LAP-BAND AP Large | 16880825 | July 2013 |
| LAP-BAND AP Large | 16430261 | June 2015 |
| LAP-BAND AP Large | 16329662 | June 2015 |

32.    There is a "yellow sticky note" in the photograph that is also referred to in the email. See Exhibits C and D.  That sticky note advises the need for the above six units to undergo re-packaging.  Kafka advises: We "need 2017 dating and STD reboxing."  *Id.*

33.    Two of the six LAP-BANDs in the photo, Serial Nos. 16430261 and 16329662, were previously over-labeled by Defendant Grimm.  Exhibit C, May 27, 2015 email.  Those two serial numbers are the lowest in value and yet appear to have the latest in expiration date, a circumstance that is metaphysically not possible if these were the original labels.  Exhibit D, 393 Photo.  The over-labeling — that is the placement of a forged label over the original label — can be observed by visual inspection: Whereas the original manufacturer's labels always contain rounded corners, the fake labels contain square corners.  Whereas the original manufacturer's labels contain no border around the serial number, the fake labels contain such a border.  And

whereas the manufacturer's labels present with clean straight-edged borders, the fake labels present with ragged and uneven bordering. See Exhibit D, 393 Photo.



**Original Manufacturer's Label**



**Over-labeled by Defendants**

34.     As to the two products that had already been over-labeled by Grimm, and for which he had been previously paid, Kafka instructs Grimm that these products required a "redo" and for that, Kafka offers Grimm a price of $250 for each re-done package. Exhibit C, May 27, 2015 email.

35.     Kafka instructs Grimm that the four units that do not require a "redo" do require re-dating using a 2017 expiry and proposes for that fraud, he — Kafka — is willing to pay Grimm $500 each. All told, the over-labeling endeavor would yield Grimm $2,500.  *Id.*

36.     Kafka advised Grimm that over and above the $2,500 for shipments on May 28, 2015, there would be 11 more "as cases are posted."  *Id.*  Kafka explains that he will "dribble" in these 11 more candiates for over-labeling because 11 is "too big a hit" and that he "can't run in the red."  *Id.*  It appears that Kafka is aware of upcoming surgeries but does not have the capital to re-date and over-label product for those surgeries until the actual date is near. In addition to the foregoing demand, Kafka advises Grimm that there would be an additional 19 units in need of redating by Spetember 2015.  *Id.*

37.     Defendant Kafka surmises that the sum of all this activity will provide Grimm with "$weet Flow."  *Id.*

2.      *Defendants Intentionally Alter the Expiration Date of Apollo LAP-BAND Devices and Palm Off the Goods as Authentic Apollo Product When They Are Not.*

38.     Apollo does not permit the implantation of expired LAP-BAND devices into patients because there is not sufficient evidence that sterility, safety and efficacy can be assured those patients.  Exhibit A, Szymczak Decl. at ¶7.  As a result, any product whose expiration has been reached is not an Apollo LAP-BAND device available for sale to a medical caregiver or for use in a patient.

39.     Defendants, however, place a fake label on the product with the intent of portraying it as an authentic Apollo LAP-BAND device, all in furtherance of sales that inure to their personal benefit.  Upon information and belief, Defendants offer to, and do in fact, place these altered goods into interstate commerce.

14

40.     Authentic Apollo LAP-BAND devices are represented as fit for their intended use. Exhibit B, DFU.  Expired LAP-BAND devices cannot and do not carry any such representation. Therefore, when over-labeled or altered LAP-BAND products are sold to a practitioner or medical institution, they are materially different than an authentic LAP-BAND device and the potential for confusion or deception is clear and present. That confusion or deception is most directed at the people who are best able to halt the practice of surgeries — doctors, patients and OR staff.  The over-labeled or re-dated LAP-BAND products are altered to present a false expiration date and to prevent detection that the over-labeled LAP-BAND device is past its genuine expiration date.

41.     Defendants' altered and materially different LAP-BAND devices are explicitly or implicitly represented to medical service providers as the same as, or equivalent to, Apollo products when, in fact, they are not. By continuing to sell these expired LAP-BAND devices as genuine, in-date Apollo products, Defendants are misrepresenting the origin and affiliation of the devices, as well as the quality, safety and efficacy of them.

    3.     *Defendants Intentionally Sell Their Altered LAP-BAND Devices Using Apollo's LAP-BAND® Marks and Logo.*

42.     Every over-labeled or re-dated LAP-BAND package and every "redo" product continues to be represented as authentic LAP-BAND product because one or more trademarks is continuously appropriated by the Defendants.  Defendants make no effort to re-name the product or to cease using the distinctive LAP-BAND® Mark. In addition, Defendants continue to use one or more distinctive logos in which Apollo has a trademark stake and interest. Their use of Apollo's intellectual property is deliberate and calculated.

15

43.     Apollo has never authorized Defendants — nor anyone else — to use Apollo-owned Marks on LAP-BAND devices that have expired and then been over-labeled with a future date of expiry.  Exhibit A, Szymczak Decl. at ¶8,

44.     Upon information and belief, Defendants use of the LAP-BAND® Mark in the sales of over-labeled goods began long after the 1995 registration date of the LAP-BAND® Mark and after the Mark became famous owing to the dominant market position held by the LAP-BAND device relative to other gastric band competitors.  Defendants' actions do and likely will continue to blur and tarnish the reputation of Apollo and the LAP-BAND® Mark itself.

45.     As a result of Defendants' use of valid and subsisting trademarks belonging to Apollo, Defendants cause confusion or have the potential to cause confusion among hospitals, surgery centers, surgeons, other physicians, other medical caregivers and patients as to the origin, sponsorship, approval, quality, safety and/or affiliation of the goods.   Further, Defendants' actions in re-selling these expired goods bearing one or more Apollo Marks allow them to falsely and misleadingly affiliate themselves with Apollo when, in fact, any such possible relationship ended on May 29, 2015.

4.     *Defendants Have Conspired to Supplant Apollo LAP-BAND Sales with Deceptive Sales of Their Own*

46.     Upon information and belief, by virtue of their 18-month tenure with Apollo and their prior tenure with Allergan, Defendants were in a position of superior knowledge as to the customers and prospects in their respective territories, as well as other locales, including their annual ordering volumes, annual patient loads, inventory levels of products, competitive supply lines, pricing structures, organizational practices and anomalies and all other information that would help create sales for some products and defeat sales for other products.

47.     Upon information and belief, by virtue of their tenure in the medical device industry and the many years spent in the medical device marketplace, Defendants were well aware of opportunities for supply of LAP-BAND devices other than newly-manufactured Apollo LAP-BAND devices and actively participated in the acquisition of the same from the gray market.

48.     By virtue of their 18-month tenure with Apollo, Defendants were aware of the existence, nature, terms and specifications of the agreements and business practices that existed between Apollo and its customers in the territories covered by the Defendants for Apollo, as well as in other locales.

49.     Upon information and belief, Defendants received or procured the six expired or nearly-expired LAP-BAND products in Exhibit D but did not acquire them from Apollo nor pay Apollo for the same. In addition, the pipeline that Defendants referred to in the May 27, 2015 email,  See Exhibit C, consisting of 11 units to be dribbled in and an additional 19 by September, was also not purchased from Apollo nor was Apollo paid for those by Defendants.

50.     Defendants received and fulfilled orders for their individually acquired LAP-BAND devices and then over-labeled the expired or nearly expired goods with a false expiration date and sold, offered for sale, or intended to sell the LAP-BAND devices, thereby intentionally depriving Apollo of the sale.

        5.      *While Employed by Apollo, Defendant Kafka Hijacked Apollo LAP-BAND Sales and Supplied Surgeons Performing Self-Pay Procedures with Discounted Grey market LAP-BAND Devices.*

51.     Between December 2013 and May 2015, Defendant Kafka frequently exchanged emails with Roxann Orban, the Office Manager at Bariatrix Florida, a medical practice affiliated with Dr. Paul Wizman, a Margate, Florida-based surgeon. The emails tracked the numbers of "self-

pay" cases undertaken by Dr. Wizman and repeatedly asked for forecasts of upcoming "self-pay" cases.

52.    Apollo does not have a policy instructing its sales force to monitor or track self-pay cases.  Exhibit A, Szymczak Decl. at ¶10.

53.    On two occasions, January 2014 and early May 2015, it appears that Bariatrix paid Kafka personally for LAP-BAND devices he provided to Bariatrix Florida. In addition, upon information and belief, payments to Kafka for Kafka-provided LAP-BAND devices to Bariatrix occurred on a monthly basis.

54.    Apollo does not permit customers to draft checks in the names of their sales people, nor do they allow surgeon-paid compensation to Apollo employees under any circumstances.  *Id*. at ¶11.

55.    Upon information and belief, Defendant Kafka received forecasts of self-pay cases and then subsequently tracked their actualization. Upon information and belief, Kafka chose this particular patient arrangement to focus on because a self-pay is more price sensitive than a patient who is indemnified by a third-party payer. As such, surgeons might seek to discount the fees charged to self-pay cases and one vehicle for doing that is to use grey-market procured goods.

56.    Upon information and belief, Kafka provided Dr. Wizman and others with LAP-BAND devices procured or gathered from sources other than Apollo and personally received compensation for them in his own name which he did not remand to Apollo.

57.    Upon information and belief, Kafka participated in and enabled the acquisition of grey market LAP-BAND devices and the re-sale of them thereafter while engaged as an employee of

Apollo, during times of day reserved for executing the duties of an Apollo employee, and using resources and assets belonging to Apollo to undertake these activities.

58.     It is not Apollo management's policy to receive forecasts or otherwise track self-pay cases uniquely.  *Id*. at ¶10.  Nobody in Apollo management instructed Kafka to procure or acquire grey market LAP-BAND devices for re-sale to Apollo customers, prospects or others. Nobody in Apollo management instructed Kafka to receive funds drawn personally to him from medical practices for the sale of LAP-BAND product.  *Id*. at ¶11.

> 6.     *Defendants Breached The Duties and Obligations They Owed to Apollo*.

59.     Defendants began employment with Apollo in or around December 2013 commensurate with the acquisition of the LAP-BAND business from Allergan.  For several years prior to that, Defendants worked for Allergan in similar sales/territory management positions to the ones they held with Apollo.

60.     All employees owe to their employer a duty of loyalty.

61.     Defendants breached their duty of loyalty when they substituted counterfeit LAP-BAND product for authentic Apollo LAP-BAND devices and received personal remuneration from those activities. Defendants breached that duty of loyalty when they appropriated Apollo's valid trademarks and used them to falsely promote their own counterfeit products to the detriment of Apollo. Defendants breached their duty of loyalty to Apollo when they fraudulently applied fake product dating to expired goods and presented them for sale as sterile and safe products, thereby putting the health of patients at risk, along with increasing the potential for Apollo's liability and decreasing the reputation of Apollo's good name and diminishing its accrued goodwill.

**D.**     **Defendants' Misconduct Causes Apollo Substantial and Irreparable Harm**

62.    Apollo has been and will continue to be harmed by Defendants' literally and impliedly false and misleading promotion of altered LAP-BAND devices and the unfair competition that that falsity gives rise to. Defendants' marketing efforts have misled relevant consumers into believing that the over-labeled products are original, authentic, unexpired Apollo LAP-BAND products that are guaranteed to be fit for their intended purpose, as well as sterile and safe for human use. As a result, substitutions of the over-labeled products for genuine Apollo LAP-BAND devices have eroded and will continue to erode Apollo's sales and goodwill, as well as its revenues and asset values. Defendants' actions put in peril and have damaged Apollo's reputation and the reputation of its famous and distinctive LAP-BAND® Mark.

63.    Apollo does not and cannot control the safety, effectiveness, or quality of Defendants' altered LAP-BAND devices. Thus, hospitals, doctors, and patients who suffer bad experiences with the over-labeled medical devices are likely to think less of Apollo, its medical devices, including the LAP-BAND, and its trademarks. Additionally, such bad outcomes potentially expose Apollo to significant regulatory and litigation risks. Even without a single bad outcome, the continued potential for them alone can diminish Apollo's reputation in the marketplace and among regulators in the state of Florida, within federal agencies and with regulatory bodies outside of the United States.

64.    Additionally, upon information and belief, the continued willful and deceitful acts of Defendants have resulted in the loss of business, including the actual loss of valuable business relationships existing between Apollo and medical service providers. On information and belief, the intentional interference by Defendants with Apollo's contractual relationships with medical service providers has also resulted in the loss of sales opportunities for other Apollo sales

representatives.     The loss of sales opportunities for its Apollo Sales Representatives is detrimental to Apollo and its business model.

65.     Additionally, Defendants' willful and deceitful acts expose Apollo and its medical provider customers to unnecessary expense, liability, administrative taxation, risk, and loss as they attempt to institute investigations, controls and remedies on behalf of patients who may have, through no fault of their own, had their safety and well-being compromised or potentially compromised.

66.     Moreover, Defendants' unauthorized use of the Apollo Marks constitutes a misappropriation of Apollo's exclusive property right in its trademarks.     Defendants' misappropriation of the Apollo Marks has confused consumers and damaged Apollo's business reputation and the goodwill established in its trademark.

## V.     CAUSES OF ACTION

### COUNT I: Trademark Counterfeiting Under The Lanham Act

67.     Apollo hereby alleges and incorporates each and every allegation set forth in paragraphs 1 through 66, inclusive, into this cause of action.

68.     The conduct of Defendants as described herein constituted, and continues to constitute, counterfeiting under the Lanham Act, codified at 15 U.S.C. § 1114(1).

69.     On information and belief, Defendants' actions have been willful, with full knowledge of Apollo's rights, and with an intent to trade on Apollo's goodwill in such registered trademarks, thus making this an exceptional case under 15 U.S.C. § 1117(a).

70.     On information and belief, no extenuating circumstances justify Defendants' counterfeiting of Apollo's LAP-BAND devices or trademarks, and Apollo is entitled to judgment for three times Defendants' profits or three times Apollo's damages from such counterfeiting

under 15 U.S.C. § 1117(b), or, in the alternative, statutory damages as provided by 17 U.S.C. § 1117(c).

71      Pursuant to 15 U.S.C. § 1116(d)(1)(A), Apollo seeks an order immediately providing for all records documenting the manufacture, sale, and receipt of such counterfeit goods.  A Motion for Expedited Discovery and a Motion for Equitable Relief are being filed contemporaneously with this Verified Original Complaint.

72.     As a result of Defendants' wrongful conduct, Apollo is further entitled to the injunctive remedies specified in the Prayer for Relief, damages in an amount to be proved at trial, including enhanced damages as allowed by law, as well as recovery of all reasonable attorneys' fees and costs incurred in connection with this action.

## COUNT II: Unfair Competition Under The Lanham Act

73.     Apollo hereby alleges and incorporates each and every allegation set forth in paragraphs 1 through 72, inclusive, into this cause of action.

74.     Defendants' actions constitute unfair competition in violation of 15 U.S.C. § 1125(a)(1)(B).

75.     On information and belief, Defendants' unfair competition has been willful and malicious, thus making this an exceptional case under 15 U.S.C. § 1117(a).

76.     As a result of Defendants' wrongful conduct, Apollo is entitled to the injunctive remedies specified in the Prayer for Relief and damages in an amount to be proved at trial, as well as recovery of all reasonable attorneys' fees and costs incurred in connection with this action.

## COUNT III: Trademark Dilution Under The Lanham Act

77.     Apollo hereby alleges and incorporates each and every allegation set forth in paragraphs 1 through 76, inclusive, into this cause of action.

78.     The conduct of Defendants as described herein constituted, and continues to constitute, trademark dilution under 15 U.S.C. § 1125(c).  Specifically, Defendants blur and tarnish the distinctive and famous LAP-BAND® Mark.

79.     On information and belief, Defendants' acts of dilution have been willful and malicious, thus making this an exceptional case under 15 U.S.C. § 1117(a).

80.     As a result of Defendants' wrongful conduct, Apollo is entitled to the injunctive remedies specified in the Prayer for Relief, damages in an amount to be proved at trial, including enhanced damages as allowed by law, as well as recovery of all reasonable attorneys' fees and costs incurred in connection with this action.

## COUNT IV: Trademark Infringement Under The Lanham Act

81.     Apollo hereby alleges and incorporates each and every allegation set forth in paragraphs 1 through 80, inclusive, into this cause of action.

82.     The conduct of Defendants as described herein constituted, and continues to constitute, trademark infringement under the Lanham Act, codified at 15 U.S.C. § 1114.

83.     Upon information and belief, Defendants' actions have been willful, with full knowledge of Apollo's rights, and with an intent to trade on Apollo's goodwill in such registered trademarks, thus making this an exceptional case under 15 U.S.C. § 1117(a).

84.     As a result of Defendants' wrongful conduct, Apollo is entitled to the injunctive remedies specified in the Prayer for Relief, damages in an amount to be proved at trial, including enhanced

damages as allowed by law, as well as recovery of all reasonable attorneys' fees and costs incurred in connection with this action.

**COUNT V:  False Advertising Under the Lanham Act**

85.     Apollo hereby alleges and incorporates each and every allegation set forth in paragraphs 1 through 84, inclusive, into this cause of action.

86.     Defendants market over-labeled and re-dated medical devices to doctors, hospitals, and others in interstate commerce as genuine Apollo LAP-BAND devices.  Defendants' promotional claims violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, which provides in relevant part that "any person who, on or in connection with any goods or services, . . . uses in commerce any . . . false or misleading description of fact or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable to a civil action by any person who believes that he or she is likely to be damaged by such act."

87.     Upon information and belief, Defendants' false and misleading representations are material to the sale of its altered product and have influenced purchasing decisions in the several states, throughout this state, and in this District.

88.     Additionally, Defendant is liable for false advertising under the Lanham Act because it intentionally induced and/or knew or had reason to know that doctors, hospitals, and others in the distribution chain would falsely describe the over-labeled medical devices as genuine Apollo LAP-BANDs to patients, but continued to sell the products to those entities.

89.     By reason of Defendants' conduct, Apollo has suffered, and will continue to suffer, damage to its business, reputation and goodwill.  Pursuant to 15 U.S.C. § 1117, Apollo is entitled

to damages for Defendants' Lanham Act violations, an accounting of profits made by Defendants on sales of its product(s), and recovery of Plaintiff's costs for this action.

90.     Given Defendants' knowledge of the proper expiration date of each product and Defendants' familiarity with Apollo's LAP-BAND products, including the rigorous testing underlying Apollo's expiration labeling, Defendants' acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Apollo to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

91.     Unless enjoined by this Court, Defendants' acts will irreparably injure Apollo's goodwill and erode its market share.  Pursuant to 15 U.S.C. § 1116, Apollo is entitled to preliminary and permanent injunctive relief to prevent Defendants' continuing acts.

## COUNT VI: Violations of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 et. seq.

92.     Apollo hereby alleges and incorporates each and every allegation set forth in paragraphs 1 through 91, inclusive, into this cause of action.

93.     The acts of Defendants, including its false and/or deceptive representations of facts concerning the nature, characteristic and qualities of its altered LAP-BAND product, constitute unfair methods of competition and unfair and deceptive trade practices in violation of Florida Deceptive and Unfair Trade Practices Act.

94.     Upon information and belief, Defendants' false and misleading practices are material to the sale of its altered product and have influenced purchasing decisions in this District and throughout this state.

95.     Apollo has suffered and continues to suffer losses from the unlawful actions of Defendants and is entitled to recover all damages sustained as a result of these actions, including attorney's fees and court costs pursuant to *Fla. Stat.* § 501.211(2) and § 501.2105.

96.     Because of Defendants' unlawful actions, Apollo has suffered and continues to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Apollo is entitled to an injunction against Defendants pursuant to *Fla. Stat.* § 501.211(2).

## COUNT VII: Trademark Dilution Under Fla. Stat. §495.151

97.     Apollo hereby alleges and incorporates each and every allegation set forth in paragraphs 1 through 96, inclusive, into this cause of action.

98.     Defendants' conduct injures Apollo's business reputation and impairs the distinctiveness of its famous LAP-BAND® Mark.

99.     As a result of Defendants' wrongful conduct, Apollo is entitled to injunctive remedies specified in the Prayer for Relief and damages in an amount to be proved at trial.

## COUNT VIII: Trademark Infringement under Florida Common Law

100.    Apollo hereby alleges and incorporates each and every allegation set forth in paragraphs 1 through 99, inclusive, into this cause of action.

101.    Defendants' conduct constitutes trademark infringement under Florida common law.

As a result of Defendants' wrongful conduct, Apollo is entitled to the injunctive remedies specified in the Prayer for Relief and damages in an amount to be proved at trial

## COUNT IX:  Tortious Interference With an Existing Contractual Relationship

102.    Apollo hereby alleges and incorporates each and every allegation set forth in paragraphs 1 through 101, inclusive, into this cause of action.

103.    Defendants, through their former employment with Apollo, have knowledge of Apollo's established and valid contractual and business relationships with medical service providers and Apollo's customary pricing for the LAP-BAND devices at issue.

104.    Defendants have wrongfully, maliciously, and tortiously interfered with Apollo's contractual and otherwise subsisting commercial relationships by misrepresenting to these medical service providers that the same authentic, original Apollo LAP-BAND devices are available through Defendants supply line at substantially reduced prices, even though Defendants' products are materially different from the authentic Apollo LAP-BAND devices in that their sterility and safety for human use is not guaranteed by Apollo and Apollo is not legally responsible as the manufacturer certifying its fitness for its labeled use.

105.    Defendants have no privilege or justification for their actions.

106.    Defendants' actions proximately caused Apollo's loss.  As a result of Defendants' wrongful conduct, Apollo is entitled to the injunctive remedies specified in the Prayer for Relief and damages in an amount to be proved at trial, as well as recovery of all reasonable attorneys' fees and costs incurred in connection with this action.

**COUNT X:  Tortious Interference with a Prospective Relationship**

107.    Apollo hereby alleges and incorporates each and every allegation set forth in paragraphs 1 through 106, inclusive, into this cause of action.

108.    Upon information and belief, Defendants have wrongfully, maliciously, and tortiously interfered with Apollo's relationships with prospective medical consumers through the unauthorized sale of re-dated and over-labeled products as authentic Apollo LAP-BAND devices.  Absent Defendants' wrongful acts, there was a reasonable probability that Apollo would have entered into a business relationship with the prospective medical consumers.

109.     Upon information and belief, Defendants intentionally and fraudulently misrepresent to these medical consumers that authentic, original Apollo LAP-BANDs are available from or through Defendants at substantially reduced prices, even though Defendants' altered and re-dated LAP-BAND units are materially different from the authentic Apollo products in that their sterility and safety for human use is not warranted by Apollo.

110.     Defendants have no privilege or justification for their actions.

111.     Defendants' actions proximately caused Apollo's loss.   As a result of Defendants' wrongful conduct, Apollo is entitled to the injunctive remedies specified in the Prayer for Relief and damages in an amount to be proved at trial, as well as recovery of all reasonable attorneys' fees and costs incurred in connection with this action.

## COUNT XI: Injunctive Relief

112.     Apollo hereby alleges and incorporates each and every allegation set forth in paragraphs 1 through 111, inclusive, into this cause of action.

113.     Defendants have damaged Apollo, and are continuing to damage Apollo, by the willful and unlawful acts complained of herein.   Defendants' conduct threatens the goodwill and business reputation that Apollo has carefully built or acquired and potentially threatens the safety of the patients who ultimately receive the implantable medical devices at issue. Unless Defendants are restrained by this Court, their conduct will cause irreparable injury to Apollo for which there is no adequate remedy at law.

## VI.    PRAYER FOR RELIEF

For the reasons stated above, Plaintiff Apollo prays:

A.       That this Court enter a preliminary order to freeze the transit or alienation of Defendants' counterfeit goods, any LAP-BAND®-labeled product in Defendants' possession,

and all related records pursuant to 15 U.S.C. § 1116(d) and schedule a hearing on the same, and that Defendants, their officers, agents, servants, employees, attorneys, and all those persons in active concert or participation with Defendants, be further preliminarily and permanently enjoined and restrained from competing unfairly with Apollo, interfering with Apollo's existing and prospective relationships, falsely advertising or promoting its goods, and from using the Apollo-owned Marks in any manner whatsoever that is likely to cause confusion, including:

1. Interfering, or acting in concert with others to interfere, with Apollo's existing contractual and business relationships with its end users and its prospective contractual and other business relationships;

2. Falsely or misleadingly representing themselves to be sponsored by, approved by, or affiliated with Apollo;

3. Falsely representing any product of Defendants' artifice as originating from, being sponsored by, affiliated with, or approved by Apollo;

4. Falsely representing any product not subject to the LAP-BAND device's original shelf life dating or its safety and sterility validation,  as a "genuine" or "authentic" LAP-BAND product;

5. Falsely representing any product not labeled with its original Apollo expiration date as a "genuine" or "authentic" Apollo product;

6. Directly or indirectly falsely advertising or promoting the over-labeled or re-dated LAP-BAND products or inducing others to substitute the over-labeled or re-dated LAP-BAND products for original LAP-BAND devices;

7. Marketing, promoting, selling, or distributing any over-labeled or re-dated  LAP-BAND®-labeled product unless and until Defendants' present substantial

scientific evidence that such a practice is safe and if done, then must present an explicit and prominently displayed written warning on the product's packaging, identifying the source of the re-dated product and stating that Apollo has no responsibility for this gastric band product and cannot guarantee its sterility or safety for human use.

8. Committing any other acts or making any other representations, express or implied, that would infringe or dilute any of Apollo's trademarks or trademark rights, or that would confuse, mislead, or deceive consumers as to Defendants' sponsorship of, approval by, or affiliation with, Apollo; and

9. Conspiring with, aiding, assisting, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (1)-(8) above.

B. For an order requiring Defendants to take action to correct any erroneous impression persons may have derived concerning the nature, characteristics, or qualities of the over-labeled or re-dated LAP-BAND products, including without limitation:

- contacting all customers who have purchased an over-labeled or re-dated LAP-BAND®-labeled device and disclosing the valid expiration date as placed originally by the manufacturer;

- further explaining that Defendants' counterfeit LAP-BAND device is not validated to be sterile by Apollo past its original expiration date;

- Defendants over-labeled or re-dated the product without authority or permission from Apollo;

- and Apollo cannot guarantee the fitness, sterility or safety for human use of the

LAP-BAND®-labeled device sold to them by Defendants and therefore the product should not be used in patients and should be returned to Defendants for destruction.

C.      For an award of damages sustained as a result of Defendants' activities, trebled as allowed by law;

D.      For an accounting of Defendants' profits resulting from their activities and that such profits be paid over to Apollo, increased as the court finds to be just under the circumstances of this case;

E.      For an award of attorneys' fees and costs as allowed by law;

F.      For an award of prejudgment and post-judgment interest on all sums awarded; and

G.      For such other and further relief as the court may deem just, equitable and appropriate.

Respectfully submitted,

By:/s/Jonathan Etra                    
Jonathan Etra, Esq.
Florida Bar No. 686905
jetra@broadandcassel.com
Sara M. Klco, Esq.
Florida Bar No. 060358
sklco@broadandcassel.com
**BROAD AND CASSEL**
One Biscayne Tower, 21st Floor
2 South Biscayne Boulevard
Miami, Florida  33131
Telephone: 305.373.9400
Facsimile:  305.373.9443
*Counsel for Plaintiffs*

*Of Counsel for Plaintiffs*
Marc B. Collier, Esq.
(PHV application to be submitted)
Texas Bar No. 00792418
Marc.collier@nortonrosefulbright.com
R. Jeffrey Lane, Esq.
(PHV application to be submitted)
Texas Bar No. 00791083
Jeff.layne@nortonrosefulbright.com
Robert L. Rouder, Esq.
(PHV application to be submitted)
Texas Bar No. 24037400
robert.rouder@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard
Suite 1100
Austin, Texas 78701
Telephone: 512.474.5201
Facsimile: 512.536.4598

4826-2016-9257, v. 1

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

APOLLO ENDOSURGERY,  INC.,

                    Plaintiff

v.                                                    **CIVIL ACTION NO.** _____

PETER KAFKA AND GREG GRIMM,

                    Defendants
_____

### **VERIFICATION**

All of the factual statements in Plaintiff's Verified Complaint are true to the best of my

knowledge.  I understand that a false statement in this Verified Complaint may subject me to

penalty of perjury

_____

BRIAN SZYMCZAK


STATE OF TEXAS
COUNTY OF TRAVIS

The foregoing instrument was acknowledged before me this 5th day of October 2015, by BRIAN
SZYMCZAK, who is personally known to me or who has produced identification and who took
an oath/affirmed

_____
Notary Public

CINTHIA MARIE JONES
Notary Public, State of Texas
My Commission Expires
April 01, 2018

My Commission Expires: _Apri1 01, 2018_____